CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
MAY 29 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOHN H. BEAMAN,<br>　　Plaintiff, | ) ) ) | Civil Action No. 7:12-cv-00163 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| DEPUTY DIRECTOR, <u>et al.</u>,<br>　　Defendants. | ) ) ) | By:　Hon. Jackson L. Kiser<br>　　　Senior United States District Judge |

John H. Beaman, a Virginia inmate proceeding <u>pro se</u>, filed a civil rights complaint, pursuant to 42 U.S.C. § 1985 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants: Deputy Director, Community Corrections; Harold W. Clarke, Director of the Virginia Department of Corrections ("VDOC"); Lou Cei, a Special Programs Manager; Layton Lester, Warden of the Lunenburg Correctional Center; Elizabeth E. Carr, a Counselor; Bob McDonnell, Governor of the Commonwealth of Virginia; William M. Muse, Chairman of the Virginia Parole Board ("Board"); Karen D. Brown, Vice Chair of the Board; Rita J. Angelone, Member of the Board; and Minor F. Stone, Member of the Board. Plaintiff alleges that the defendants conspire to keep plaintiff incarcerated despite his parole eligibility and good conduct, in violation of the United States Constitution. This matter is before me for screening, pursuant to 28 U.S.C. § 1915A. After reviewing plaintiff's submissions, I dismiss the complaint without prejudice for failing to state a claim upon which relief may be granted.

I.

Plaintiff alleges the following facts. The Circuit Court of Northampton County, Virginia, sentenced plaintiff to, <u>inter alia</u>, eighty years' imprisonment following his guilty pleas to grand larceny, statutory burglary, and statutory rape. Plaintiff entered the VDOC on September 23, 1976, to serve the sentence and is presently serving his thirty-sixth year of incarceration. While in VDOC facilities, plaintiff earned a GED and studied small business management and

accounting, auto mechanics, general building and maintenance, heavy equipment operations, cooking and baking, life skills, and creative writing. Plaintiff has been entrusted with various institutional jobs at different VDOC facilities, involving food service, shoe shops, boiler plants, visiting rooms, the motor pool, warehouse and freezer storage, and the tag shop. Plaintiff has not been charged with an institutional violation since 1997, when plaintiff fought another inmate at Keen Mountain Correctional Center. Plaintiff registered with the Virginia State Police's sex offender registry, provided a DNA sample, and completed phases one, two, and three of the sex offender program. The VDOC classifies plaintiff as a Level One offender, the lowest categorized security risk for a VDOC inmate, because of his achievements and conduct.

The Board has denied plaintiff parole release for the past twenty-six times the Board reviewed plaintiff.[1] Plaintiff acknowledges that the Board has given plaintiff the reason for the denial but complains that the only reason ever given is because of "the seriousness of the offense[s.]" Plaintiff argues that the Board's "unfair practice" of considering only the seriousness of the offenses, which he calls "Proposal X," violates the Eighth and Fourteenth Amendments and the Ex Post Facto and Separation of Powers Clauses of the United States Constitution. Plaintiff believes that defendants' "Proposal X" makes "a mockery out of [plaintiff's] institutional progress in education, vocations, . . . program participation, and even his parole process, and did treat his application differently from similarly situated and already released others following his interview on [October 22, 2011,] and denying his application 12 days later on [November 3, 2011]." (Compl. 6.) Plaintiff concludes that "he has become a victim of a "synchronized" conspiracy.

---

[1] Plaintiff quotes a portion of the Deerfield Correctional Center's Parole / Pre-Release Manual that says, "You are granted parole with special conditions you [sic] are released to a program." (Compl. 8.) It is clear from the rest of the complaint that plaintiff has not been approved for parole release and is merely quoting from the manual to explain why plaintiff contacted a Virginia re-entry program.

2

Plaintiff further alleges that:

> [T]he conspiratorial actions of the Defendants to[] prolong his incarceration under cover of official discretion, following thirty-five-plus years of imprisonment for first-time crimes; based on the seriousness of the offense, constitutes a retrospective application of [Virginia Code] § 17-232(a)[2] as to violate the ex post facto . . . clause. . ., enhancing former [Virginia] Code § 53-251[3]. . . . and requiring [p]laintiff to serve more than one-fourth of his sentence, violates the Separation of Powers clause and procedural due process under the influencing power of "Proposal X," which repeals preexisting State statutes and circumvents Plaintiff's parole eligibility.

(Id. 2.)

Plaintiff concludes that:

> [T]he Defendants conspired to give the impression that he had achieved nothing constructively during his entire incarceration in preparation for supervised release when his institutional folder just disappeared at the Deerfield facility (?) [sic], and that his "new" folder contained no documentation highlighting his progress in education, vocations or program participation, thereby prolonging his incarceration.

(Id. 5.)

Plaintiff asks me to declare that plaintiff should be paroled and that defendants conspired to unlawfully keep plaintiff imprisoned. Plaintiff also asks that I order defendants to parole him.[4]

---

[2] Virginia Code § 17-232 (1994) read, "There is hereby created within the judicial branch as an agency of the Supreme Court of Virginia, the Virginia Criminal Sentencing Commission, hereinafter referred to in this chapter as the Commission." This section was repealed on October 1, 1998, and is presently found in Virginia Code § 17.1-800.

[3] Virginia Code § 53-251 is now codified at § 53.1-151, which describes when a Virginia inmate may be eligible for parole consideration.

[4] To the extent that plaintiff's requested relief would accelerate plaintiff's release from incarceration, I decline to construe the complaint as a petition for a writ of habeas corpus because the pleading does not substantially conform to the form § 2254 petition. See Rule 2(d) of the Rules Governing § 2254 Cases. See also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (holding civil rights actions about parole release are proper when plaintiff's successful outcome would be a new parole hearing).

3

II.

I must dismiss any action or claim filed by an inmate if I determine that the action or claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting a plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level. . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions. . . ." Id. Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1950 (2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. Id. Although I liberally construe pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), I do not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of the complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.

4

1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

An actionable conspiracy under 42 U.S.C. § 1985(3), which is the subsection most relevant to plaintiff's allegations, requires a plaintiff to allege:

> (1) [A] conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. Moreover, the law is well settled that to prove a section 1985 "conspiracy," a claimant must show an agreement or a "meeting of the minds" by defendants to violate the claimant's constitutional rights.

Simmons v. Poe, 47 F.3d 1370, 1376-77 (4th Cir. 1995). "[W]here a conspiracy is alleged, the plaintiff must plead facts amounting to more than 'parallel conduct and a bare assertion of conspiracy . . . . Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.'" A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Twombly, 550 U.S. at 556-57).

Except for the members of the Board, plaintiff does not allege facts suggesting that the alleged co-conspirators have any knowledge of one another, were involved with plaintiff's parole or the allegedly missing inmate file, or reached a "meeting of the minds."[5] Plaintiff also fails to meet the second element of a § 1985(3) claim by failing to allege any facts describing a class-based, discriminatory animus. See, e.g., Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997) ("Prisoners are not a suspect class."). "[T]he Constitution does not require things which are different in fact or opinion to be treated in law as though they are the same." Tigner v. Texas,

---

[5] Plaintiff's claim may also be barred by the intracorporate conspiracy doctrine, which bars claims based on an alleged conspiracy among a single legal entity's officers, employees, and agents unless an exception applies. See, e.g., Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985).

5

310 U.S. 141, 147 (1940). See Reffitt v. Nixon, 917 F. Supp. 409, 414 (E.D. Va. 1996) ("[I]in light of the myriad of factors involved in a parole decision, 'it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review of an equal protection claim.'") (quoting Rowe v. Cuyler, 534 F. Supp. 297, 301 (E.D.N.Y. 1982), aff'd, 696 F.2d 985 (3rd Cir. 1982)). Plaintiff's allegation that "similarly situated" inmates, which ostensibly means inmates who also committed serious criminal offenses, have already been paroled undercuts plaintiff's present argument that "Proposal X" exists or is applied ex post facto. For the reasons discussed below, plaintiff also fails to describe a deprivation of equal enjoyment of a right secured by the law.[6]

  A. Plaintiff fails to describe a violation of due process guaranteed by the Fourteenth Amendment.

Plaintiff's accusations that the Board unlawfully "prolong[s] his incarceration" and unlawfully "requir[es] [p]laintiff to serve more than one-fourth of his sentence" fail as a matter of law. Plaintiff was sentenced to eighty years' incarceration, and plaintiff does not have a constitutional right to be paroled before plaintiff completes the eighty-year sentence. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.") Plaintiff acknowledges both that the Virginia system of discretionary parole does not grant plaintiff a liberty interest in parole release and that the Board explains at each denial why the Board denied parole release. See Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996) (finding that due process requires an eligible inmate be considered for parole in conformity with state law and that the Board give an inmate a statement of reasons for

---

[6] Plaintiff's invocation of the Separation of Powers clause and the Eighth Amendment does not have any basis in law or any relationship to an alleged fact. Plaintiff also fails to relate the alleged missing inmate file to any defendant or to any federal right.

6

the denial of parole); Gaston v. Taylor, 946 F.2d 340, 344-45 (4th Cir. 1991) (en banc) (holding that Virginia's system of discretionary parole does not grant plaintiff a liberty interest in parole release); Va. Code § 53.1-154.1 (describing factors to be considered to recommend parole to the Board); Va. Code § 53.1-155 (requiring the Board to deny parole unless the Board determines an inmate meets certain criteria). Plaintiff also acknowledges that he has been eligible for parole for more than a decade and that the Board has reviewed plaintiff for parole release at least twenty-six times.

The thrust of plaintiff's complaint is that the Board unfairly gives greater weight to the "seriousness of the offenses" plaintiff committed, grand larceny, statutory burglary, and statutory rape, rather than plaintiff's good behavior while incarcerated. However, "reliance on the seriousness of the offense is a proper standard for parole decisions[,]" and arguments to the contrary "fail[] as a matter of law." Brown v. Johnson, 169 F. App'x 155, 157 (4th Cir. 2006) (citing Greenholtz, 442 U.S. at 11, 15-16, and Bloodgood v. Garraghty, 783 F.2d 470, 472, 475 (4th Cir. 1986)). See Davis v. Jackson, No. 94-6121, reported at 1995 U.S. App. LEXIS 36663, at *2-4, 1995 WL 761034, at *1 (4th Cir. Dec. 27, 1995) (same) (citing Bloodgood, 783 F.2d at 470, and Smith v. Hambrick, 637 F.2d 211 (4th Cir. 1980)). The Board may lawfully exercise its discretion to deny parole release after determining that the seriousness of plaintiff's crimes outweighs plaintiff's good behavior in prison. Accordingly, plaintiff fails to establish a due process violation.

B. Plaintiff fails to describe a violation of the Ex Post Facto Clause.

The federal and state governments may not enforce an ex post facto law. U.S. Const. art. I, § 9, cl. 3; id. art. I, § 10, cl. 1. An ex post facto law "'makes more burdensome the punishment for a crime, after its commission.'" Collins v. Youngblood, 497 U.S. 37, 42 (1990) (quoting

7

Beazell v. Ohio, 269 U.S. 167, 169-70 (1925)). A change to a parole law that creates a sufficient risk of increasing the measure of punishment attached to the covered crimes violates the Ex Post Facto Clause. Garner v. Jones, 529 U.S. 244, 251 (2000); Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995). The Ex Post Facto Clause applies to parole regulations that are similar to legislative rules because legislative rules have the force of law. Warren v. Baskerville, 233 F.3d 204, 207 (4th Cir. 2000); Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n, 874 F.2d 205, 207 (4th Cir. 1989). The Ex Post Facto clause does not apply to parole administrative policies because the policies are "guides, and not laws: guides may be discarded where circumstances require; laws may not." Prater v. U.S. Parole Comm'n, 802 F.2d 948, 951 (7th Cir. 1986). See Warren, 233 F.3d at 208 (describing the distinction between parole laws and the Board's policy made within the parameters of the laws).

Plaintiff's ex post facto claim fails because he does not establish a retroactive change in a legal rule that increased his punishment. Plaintiff complains that Board's "unfair practice" overly weighs his crimes to conclude plaintiff may not be paroled. However, plaintiff fails to allege facts that suggest the Board's decision is based on an ex post facto law or legislative rule instead of the Board's ordinary exercise of discretion, pursuant to the its administrative policies. See VIRGINIA PAROLE BOARD POLICY MANUAL (Oct. 1, 2006, ed.) (available at http://www.vadoc.state.va.us/vpb/manuals/pb-policymanual-1006.pdf) (last accessed Apr. 19, 2012) (noting that the Board may consider, inter alia, the length of imposed sentences, the existence of multiple convictions, and present and prior offenses, pursuant to Virginia Code § 53.1-155). Plaintiff does not sufficiently explain the relationship between Virginia Code §17-232, which created the Virginia Criminal Sentencing Commission, and the Board reviewing plaintiff, pursuant to Virginia Code § 53.1-155, and how that review violates the Ex Post Facto

8

Clause. The Board has not lengthened plaintiff's incarceration beyond the imposed eighty-year sentence, and plaintiff has been eligible for parole consideration for many years. Accordingly, plaintiff fails to describe a violation of the Ex Post Facto Clause.

III.

For the foregoing reasons, I dismiss the complaint without prejudice for failing to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff.

ENTER: This 29th day of May, 2012.

Senior United States District Judge

9